UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

ADRIANO MAIA DOS SANTOS,

Petitioner,

v.

KRISTI L. NOEM, *et al.*,

Respondents.

No. 25-cv-12052-JEK

---

**RESPONDENTS' OPPOSITION TO
PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 1)**

The Court should deny Petitioner Adriano Maia Dos Santos's Petition for a Writ of Habeas Corpus. Doc. No. 1. Petitioner requests immediate release from immigration detention. *Id*. ¶ 6. Respondents are cognizant of this Court's recent decision in *Gomes v. Hyde*, No. 25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025). Nevertheless, U.S. Immigration and Customs Enforcement ("ICE") respectfully maintains that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

I.    **BACKGROUND**

A.    **ICE Declaration**

"Petitioner is a native and citizen of Brazil who entered the United States on October 20, 2017, at a place other than a port of entry or designated place by the Attorney General, near Calexico, California." Ex. 1, Decl. of John Charpentier (July 29, 2025), ¶ 6. U.S. Customs and Border Protection ("CBP") "encountered the Petitioner at this time[,]" at which point Petitioner admitted "that he did not have legal documents to enter or remain in the United States and entered without inspection by an immigration officer." *Id*. ¶¶ 6–7. Accordingly, "CBP placed

the Petitioner in expedited removal proceedings and detained him pursuant to 8 U.S.C. § 1225." *Id*. ¶ 7. "At this time, the Petitioner claimed a fear of return to Brazil." *Id*.

On November 14, 2017, U.S. Citizenship and Immigration Services ("USCIS") "conducted a credible fear interview." *Id*. ¶ 8. Two days later, on November 16, 2017, "USCIS made a positive credible fear finding and the Petitioner was served with a Notice to Appear, which alleges that he is inadmissible pursuant to 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1182(a)(6)(A)(i)." *Id*. ¶ 9. The next day, ICE filed the Notice to Appear in Immigration Court. *Id*. ¶ 10.

Thereafter, on January 23, 2018, an Immigration Judge "conducted a custody redetermination hearing for the Petitioner under 8 U.S.C. § 1226" and granted Petitioner "bond in the amount of $15,000, with alternatives to detention under ICE's discretion." *Id*. ¶ 11. "On January 29, 2018, the Petitioner was released from ICE's custody and enrolled in the alternatives to detention program with GPS monitoring." *Id*. ¶ 12. Less than a month later, on February 18, 2018, "ICE terminated the Petitioner from the alternatives to detention program and removed his GPS monitoring, as he was subject to the previously ordered $15,000 bond." *Id*. ¶ 13.

Seven years later, on February 7, 2025, police in Plymouth, Massachusetts arrested Petitioner "for Unlicensed Operation of a Motor Vehicle." *Id*. ¶ 14. That charge was dismissed a few days later, on February 10, 2025. *Id*.

Three months later, on May 30, 2025, "ICE encountered the Petitioner during a traffic stop in Plymouth, Massachusetts." *Id*. ¶ 15. "Based on voluntary statements made by the Petitioner, ICE determined that he is a Brazilian citizen and national, who entered the United States without inspection or admission." *Id*. "ICE detained Petitioner pursuant to 8 U.S.C. § 1225(b)." *Id*. ICE also "issued a Form I-200, Warrant for Arrest of Alien, and a Form I-286,

Notice of Custody Determination." *Id.* ICE cancelled Petitioner's bond three days later, on June 2, 2025. *Id.* ¶¶ 17.

   While in detention in New Hampshire, on July 7, 2025, Petitioner "filed a motion for a custody redetermination hearing." *Id.* ¶¶ 18-19. The next day, the "immigration Judge denied release on bond because the Petitioner is ineligible for a custody redetermination hearing." *Id.* ¶ 20. "Both ICE and the Petitioner waived the right to appeal this order before the Board of Immigration Appeals." *Id.*

   Petitioner was transferred to the Plymouth County Correctional Facility on July 12, 2025, where he is currently held. *Id.* ¶¶ 21-22.

### B.    The Petition

   Petitioner alleges that he "was initially detained by" CBP on "October 20, 2017, in and about Calexico, California, allegedly immediately or soon after entering the United States illegally." Pet. For Writ of Habeas Corpus (July 22, 2025), Doc. No. 1, ¶ 14. "Petitioner was initially processed for expedited removal; upon indicating that he feared persecution in his home country, Petitioner was interviewed by an asylum officer who determined he had demonstrated a credible fear of persecution." *Id.* ¶ 15. "Petitioner was placed in removal proceedings pursuant to 8 U.S.C. § 1229a" and the ICE "elected to detain Petitioner throughout the process." *Id.*

   In January 2018, Petitioner sought bond before an Immigration Judge in California who, "upon stipulation of [ICE], released Petitioner from custody under bond of $15,000 and other alternatives to detention at [ICE's] discretion." *Id.* ¶¶ 3, 16. Petitioner then relocated to Massachusetts where he has lived since. *Id.* ¶ 17. Petitioner alleges that he is "diligently pursuing relief from removal from the United States" and that he "has complied with all requirements of release and [ICE] has not sought previously to revoke his bond." *Id.* ¶ 4.

On the morning of May 30, 2025, "ICE detained Petitioner . . . when they stopped the vehicle he was traveling in to work[.]" *Id*. ¶ 18.  Petitioner alleges that "ICE had been surveilling and targeting another member of Petitioner's party for arrest," and that ICE detained each passenger in the car. *Id*. ¶ 18.  ICE has detained Petitioner since then and currently holds him at Plymouth County Correctional Facility. *Id*. ¶ 19.

On July 7, 2025, "Petitioner sought bond redetermination" before the Immigration Court, which "denied Respondent's request" on the ground that "Respondent was 'statutorily ineligible' for custody redetermination." *Id*. ¶ 20.

Petitioner seeks immediate release from custody. *Id*. ¶ 6.  To that end, he asserts three claims.  In Count 1, Petitioner alleges that his detention violates his Fifth Amendment right to due process. *Id*. ¶ 22.  Count 2 alleges that Petitioner is entitled to a bond hearing because ICE transferred Petitioner from expedited removal to full removal proceedings upon his showing of a credible fear of persecution. *Id*. ¶¶ 31–34.  And Count 3 alleges that Petitioner is entitled to a hearing before an Immigration Judge on humanitarian parole. *Id*. ¶¶ 36–40.

## II.    LEGAL STANDARD

Section 2241 of Title 28 of the United States Code provides district courts with jurisdiction to hear federal habeas petitions.  It is Petitioner's burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treatises of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

III.    **ARGUMENT**

A.    **Petitioner is Lawfully Detained as an Applicant for Admission Under 8 U.S.C. § 1225(b)(2)(A)**

An applicant for admission is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States [] whether or not at a designated port of arrival . . . ." 8 U.S.C. § 1225(a)(1).  The term "admitted" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

As explained by the Supreme Court, "an alien who tries to enter the country illegally is treated as an 'applicant for admission' . . . and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry[]'" into the United States.  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (citations omitted); *accord Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025) ("An alien, like the respondent, 'who tries to enter the country illegally is treated as an applicant for admission.'" (quoting *Thuraissigiam*, 591 U.S. at 140)). Stated another way, an "alien who arrives at a 'port of entry,' *i.e.*, a place where an alien may lawfully enter, must apply for admission.  An alien . . . who is caught trying to enter at some other spot is treated the same way." *Thuraissigiam*, 591 U.S. at 108.  The Board of Immigration Appeals ("BIA") likewise has held that an alien "apprehended just inside the southern border and not at a point of entry, on the same day they crossed into the United States" is "arriving" for purposes of the definition of "applicant for admission" in § 1225(a)(1).  *Matter of Q. Li*, 29 I. & N. Dec. at 68 (cleaned up).

Accordingly, ICE's position is that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b) even though he previously was released on bond under 8 U.S.C. § 1226.  *See Maldonado v. Bostock*, No. 23-cv-00760, 2023 WL 5804021, at

*1–3 (W.D. Wash. Aug. 8, 2023) (holding that an individual apprehended near the border and later processed under § 1226 "appears to be an applicant for admission because he is a noncitizen 'present in the United States' and 'has not been admitted'" (quoting 8 U.S.C. § 1225(a)(1)); *Matter of Q. Li*, 29 I. & N. Dec. at 69 (holding that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under [§ 1225(b)], and is ineligible for any subsequent release on bond under [§ 1226]").

To the extent 8 U.S.C. §§ 1225 and 1226 are in conflict, the "specific provision" governs over the "general one." *See Edmond v. United States*, 520 U.S. 651, 657 (1997); *see Rodriguez v. Bostock*, No. 25-cv-05240, 2025 WL 1193850, at *13 (W.D. Wash. Apr. 24, 2025) (explaining that a "plain reading" of § 1225 "conflicts" with a "plain reading" of § 1226). Section 1226 is the "default" detention authority. *Jennings*, 583 U.S. at 288. By contrast, § 1225 is narrower and applies only to "applicants for admission"; that is, individuals present in the United States who have not been admitted. 8 U.S.C. § 1225. Thus, ICE's position is that the specific detention authority under § 1225 governs over the general authority found at § 1226(a).

Accordingly, ICE's position is that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A) because Petitioner remains an applicant for admission as an "alien present in the United States who has not been admitted or who arrives in the United States[.]"[1]  8 U.S.C. § 1225(a)(1). Petitioner's custody pursuant to 8 U.S.C. § 1225(b)(2)(A) subjects him to mandatory detention. *See* 8 U.S.C. § 1225(b)(2)(A) (mandating detention of an "applicant for

---

[1] *But see Gomes*, 2025 WL 1869299 at *7 (concluding that "the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States").

admission" where "the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted").  As explained by the Supreme Court, § 1225(b)(2) "mandate[s] detention of applicants for admission until certain proceedings have concluded."  *Jennings*, 583 U.S. at 297.  In declining to find a statutory requirement to conduct bond hearings for applicants for admission, the Supreme Court explained that "nothing in the statutory text imposes any limit on the length of detention" nor "says anything whatsoever about bond hearings."  *Id.*; *see also id.* at 302 (explaining that § 1225 authorizes detention of such individuals "throughout the completion of applicable proceedings and not just until the moment those proceedings begin"); *Thuraissigiam*, 591 U.S. at 111 ("Whether an applicant who raises an asylum claim receives full or only expedited review, the applicant is not entitled to immediate release.").

Petitioner remains subject to mandatory detention even though he was transferred from expedited to full removal proceedings in 2017.  *See* Pet., Doc. No. 1, ¶¶ 31-34 (setting forth Count 2, which alleges that Petitioner is entitled to a bond hearing because ICE transferred Petitioner to full removal proceedings upon his showing of a credible fear of persecution).  If a noncitizen "originally placed in expedited removal establishes a credible fear, he receives a full hearing before an immigration judge."  *Matter of M-S-*, 27 I. & N. Dec. 509, 512 (A.G. 2019).  And where, as hear, an immigration officer determined that Petitioner "has a credible fear of persecution[,]" and Petitioner consequently was transferred from expedited to full removal proceedings, Petitioner "shall be detained for further consideration of the application of asylum."  *See id.* at 511–12, 515 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)); *Benito Vasquez v. Moniz*, No. 25-cv-11737-NMG, 2025 WL 1737216, at *2 (D. Mass. June 23, 2025) ("If an alien is found to

have a credible fear, he may be detained pending a decision on his asylum application." (citing *Thuraissigiam*, 591 U.S. at 111)).

Nevertheless, Petitioner is entitled to seek custody redetermination in the Immigration Court, which amounts to an administrative remedy that Petitioner has not exhausted. Instead, on July 7, 2025, Petitioner moved for custody redetermination, which an Immigration Judge denied, and Petitioner waived appeal of the Immigration Judge's decision. Ex. 1, Charpentier Decl. ¶¶ 19-20.

Petitioner's failure to exhaust his administrative remedies by appealing the Immigration Judge's decision to the Board of Immigration Appeals ("BIA") provides another basis to dismiss the petition. "Generally speaking, a plaintiff's failure to exhaust her administrative remedies precludes her from obtaining federal review of claims that would have properly been raised before the agency in the first instance." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). While there is no statutory mandate to exhaust a claim for release in Immigration Court before presenting such claim to the district court, common-law exhaustion "allows an agency the first opportunity to apply its expertise and obviates the need for judicial review in cases in which the agency provides appropriate redress." *Id.* at 256 (cleaned up) (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175–76 (1st Cir. 2016)). Here, Petitioner's failure to seek release from detention through appeal to the BIA weighs in favor of dismissal for failure to exhaust.[2]

Moreover, Petitioner is entitled to ask ICE for discretionary parole from custody. Parole provides another means of due process and should be exhausted before asserting a due process claim in this Court. *See Traore v. Decker*, No. 19-cv-4612, 2019 WL 3890227, at *4 (S.D.N.Y.

---

[2] *But see Gomes*, 2025 WL 1869299 at *4–5.

Aug. 19, 2019) (explaining that "by failing to file an application for or even request[ing] parole, [p]etitioner has failed to exhaust his administrative remedies."); *Alexandre v. Decker*, No. 17-cv-5706, 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019) (concluding that "the parole procedure, as currently enforced, satisfies due process for 'arriving aliens' because (1) they are differently situated than individuals within our borders, and (2) the period of detention during such a proceeding is not indefinite—it will end upon the conclusion of the removal proceeding").

### B.    Petitioner's Detention is Constitutional Because Applicants for Admission Have Limited Due Process Rights

Petitioner's claim in Count 1 that his detention violates the Fifth Amendment's due process clause is without merit because the Supreme Court has held that applicants for admission are entitled only to the protections set forth by statute and that "the Due Process Clause provides nothing more . . . ." *Thuraissigiam*, 591 U.S. at 140; *see also* Pet. ¶ 16.

Applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. U.S. ex. rel. Mezei*, 345 U.S. 206, 212 (1953) (citation omitted). In *Mezei*, for example, the Supreme Court held that a returning lawful permanent resident's detention at the border without a hearing to effectuate his exclusion from the United States did not violate due process. *Id*. at 207, 215. And even though he had resided in the United States previously, he had since been "permanently excluded from the United States on security grounds." *Id.* at 207. The Supreme Court held that Mr. Mezei's detention did not "deprive[] him of any statutory or constitutional right." *Id.* at 215. Instead, the Court reiterated that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments" that is "largely immune from judicial control." *Id.* at 210. The Court recognized that "once passed through our gates,

9

even illegally," aliens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Id.* at 212. But "an alien on the threshold of initial entry stands on a different footing" than an alien who has effected an entry into the United States. *Id.*

The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who illegally crosses the border—like Petitioner—is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139–40. "When an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country . . . ." *Id.* at 139. Moreover, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). The Court held that this same "threshold" rule applies to individuals, like Petitioner, who are apprehended after trying "to enter the country illegally" since by statute, such individuals are also defined as applicants for admission. *See id.* at 139–40. Treating such an individual in a more favorable manner than an individual arriving at a port of entry would "create a perverse incentive to enter at an unlawful rather than a lawful location." *Id.* at 140.

The First Circuit also has held that detention of an individual seeking admission to the United States did not violate due process. *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987). In that case, the First Circuit explained that "the detention of the appellants [was] entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress." *Id.* The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process

violation in the denial of their parole applications "pending the ultimate (seasonable) resolution

of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental

footdragging in these cases" and because "prompt attention appears to have been paid to the

administrative aspects of exclusion and asylum." *Id.*

      District courts around the country routinely find no due process violation in the detention

of individuals subject to 8 U.S.C. § 1225(b). For example, in *Poonjani v. Shanahan*, the court

held that *Mezei* "is directly on point and controls this case" and that "because the immigration

statues at issue here do not authorize a bond hearing, *Mezei* dictates that due process does not

require one here." 319 F. Supp. 3d 644, 647–49 (S.D.N.Y. 2018) (citing *Mezei*, 345 U.S. at

212); *see also, e.g.*, *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020)

(applying *Mezei* to hold that an individual's "detention [did] not violate due process because

Congress has authorized mandatory detention for immigrants in [his] circumstances and that is

sufficient to satisfy due process"); *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212

(D.N.M. 2020) ("*Mezei* and its progeny do not hold that [p]etitioner has no due-process rights;

rather, the applicable statutory process shapes her procedural due process rights. Because

[p]etitioner has no statutory right to release or a bond hearing . . . she has no due-process right to

the relief requested."); *Aslanturk v. Hott*, 459 F. Supp. 3d 681, 694 (E.D. Va. 2020) (declining to

"ignore binding, Supreme Court precedent" to award an applicant for admission a bond hearing

since § 1225(b) does not provide for such hearing). Other courts have held similarly, especially

after the Supreme Court in *Thuraissigiam* reaffirmed its rule regarding the due process rights of

applicants for admission. *See, e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 676 (S.D. Tex.

2021) ("When a noncitizen attempts to unlawfully cross the border as [p]etitioner did, his

constitutional right to due process does not extend beyond the rights provided by statute.").

To be sure, some district courts have concluded that further analysis is warranted to determine if an applicant for admission is entitled to a bond hearing under the Constitution once § 1225's mandatory detention becomes "unreasonably prolonged." *See, e.g.*, *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (holding that arriving aliens "have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable" (citation omitted)). Here, however, ICE detained Petitioner on May 30, 2025. In short, therefore, Petitioner's detention is authorized by 8 U.S.C. § 1225(b) and does not violate the Constitution. *Cf. Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[The] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process.").

### C.    Petitioner is Not Entitled to a Hearing Before an Immigration Judge on Humanitarian Parole

Finally, the Court should reject Count 3 of the Petition, which claims that Respondents violated 8 U.S.C. § 1182(d)(5) and the due process clause by not providing Petitioner a hearing on humanitarian parole before an immigration judge. Pet. ¶¶ 36-40. But the statute does not provide for that. Instead, "Congress has authorized the [Secretary of Homeland Security], in his discretion, to grant parole to any nonadmitted alien when the [Secretary] deems such lenity to be in the public interest." *Amanullah v. Nelson*, 811 F.2d 1, 5 (1st Cir. 1987) (citing 8 U.S.C. § 1182(d)(5)). "The scope of the parole authority is close to plenary." *Id.*; *see also Lamarche v. Mayorkas*, 691 F. Supp. 3d 274, 277 (D. Mass. Sept. 6, 2023) (noting that the executive branch "wield[s] significant discretionary power over the outcome of parole adjudications"); *Roe v. Mayorkas*, No. 22-cv-10808-ADB, 2023 WL 3466327, at *17 n.11 (D. Mass. May 12, 2023) (holding that the executive branch has "discretion over the outcome of parole decisions"); *L.F.O.P. v. Mayorkas*, 656 F. Supp. 3d 274, 276 (D. Mass. 2023) (observing that the executive

branch "has wide discretion to grant or deny petitions" for parole under § 1182(d)(5)). Any exercise of discretion regarding humanitarian parole "must be reasonable and reasonably explained."[3] *Biden v. Texas*, 597 U.S. 785, 806-07 (2022).

Moreover, this Court cannot review any individual parole decision concerning Petitioner. *Roe*, 2023 WL 3466327, at *8. "Section 1252(a)(2)(B)(ii) of the [Immigration and Nationality Act], which governs review of [ICE's] authority to grant humanitarian parole, provides that 'no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]'" *Id*. at *7 (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). Accordingly, "§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions[.]" *Id*. at *8 (quoting *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018)).

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the petition.

---

[3] Since Petitioner is an applicant for admission, the process due him under § 1182(d)(5) is that set forth in the statute. *Thuraissigiam*, 591 U.S. at 140.

Dated: July 29, 2025                    Respectfully submitted,

                                        LEAH B. FOLEY
                                        United States Attorney

                        By:    */s/ Julian N. Canzoneri*
                               Julian N. Canzoneri
                               Assistant U.S. Attorney
                               U.S. Attorney's Office
                               John Joseph Moakley U.S. Courthouse
                               One Courthouse Way, Suite 9200
                               Boston, Massachusetts 02210
                               (617) 748-3170
                               julian.canzoneri@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on July 29, 2025.

                               */s/ Julian N. Canzoneri*
                               Julian N. Canzoneri
                               Assistant U.S. Attorney