UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ADRIANO MAIA DOS SANTOS, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | |
| KRISTI L. NOEM, Secretary, U.S. Department of Homeland Security; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JOSEPH D. MCDONALD, Sheriff, Plymouth County, Massachusetts; and ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, | ) ) ) ) ) ) ) ) ) ) | No. 1:25-cv-12052-JEK |
| Respondents. | ) ) | |

## MEMORANDUM AND ORDER ON
## PETITION FOR A WRIT OF HABEAS CORPUS

**KOBICK, J.**

Petitioner Adriano Maia dos Santos, a citizen of Brazil, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking an order of immediate release from detention. In October 2017, dos Santos was detained by U.S. Customs and Border Protection ("CBP") officers and placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1) after crossing into the United States between ports of entry. Dos Santos claimed a fear of returning to Brazil, which the U.S. Citizenship and Immigration Services ("USCIS") found credible. U.S. Immigration and Customs Enforcement ("ICE") consequently filed a Notice to Appear in Immigration Court, thus terminating dos Santos' expedited removal proceedings and commencing standard removal proceedings against him under 8 U.S.C. § 1229a. In January 2018, pursuant to a stipulation between dos Santos and the Department of Homeland Security, an Immigration Judge ordered dos

Santos released on bond after conducting a custody redetermination hearing under 8 U.S.C. § 1226. For over seven years, dos Santos resided in the United States subject to that bond.

On May 30, 2025, following a traffic stop, ICE officers arrested dos Santos pursuant to a warrant, ordered him detained under 8 U.S.C. § 1226, and cancelled his bond. Section 1226(a) establishes a discretionary detention framework for noncitizens who are "arrested and detained" "[o]n a warrant issued by the Attorney General." Noncitizens detained under Section 1226(a) have the right to request a bond hearing before an Immigration Judge, at which the government bears the burden to prove that continued detention is justified. After dos Santos requested a new bond hearing, however, the government claimed that he is ineligible for bond because he is detained under 8 U.S.C. § 1225(b)(2). In contrast with Section 1226(a)'s discretionary detention scheme, Section 1225(b)(2) mandates detention if an immigration officer determines that a noncitizen seeking admission to the United States is not clearly and beyond a doubt entitled to be admitted. Agreeing that dos Santos is detained under Section 1225(b)(2), the Immigration Judge deemed him ineligible for bond.

Dos Santos' petition for a writ of habeas corpus contends that he is not lawfully detained under Section 1225(b) and requests that the Court order his immediate release from detention. The government responds that although dos Santos is in removal proceedings and was arrested on a warrant citing Section 1226, he is, and has always been, subject to mandatory detention under Section 1225(b)(2). For the reasons articulated in *Gomes v. Hyde*, No. 25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025), the Court disagrees. The government's argument contravenes the plain text of Section 1226(a) and would render superfluous Section 1226(c), which mandates the detention of certain noncitizens and is the sole exception to Section 1226(a)'s discretionary framework. Because dos Santos was arrested on a warrant and ordered detained

2

under Section 1226, his detention continues to be governed by Section 1226(a)'s discretionary framework. The Court will, accordingly, grant his petition and order that he be immediately released from detention, subject to the Immigration Judge's 2018 bond order.

## BACKGROUND

I.  **Statutory and Regulatory Framework.**

Two statutes principally govern the detention of noncitizens[1] pending removal proceedings: 8 U.S.C. §§ 1225 and 1226.[2] Section 1225 applies to "applicants for admission," who are, as relevant here, noncitizens "present in the United States who [have] not been admitted." 8 U.S.C. § 1225(a)(1).[3] All applicants for admission must be inspected by an immigration officer. *Id.* § 1225(a)(3). Certain applicants for admission—including, as relevant here, noncitizens who lack legal documents to enter or remain in the country—are then subject to expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (citing 8 U.S.C. §§ 1182(a)(6)(C), (7)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108-09 (2020). If a noncitizen is subject to expedited removal, the inspecting immigration officer generally must "order the alien removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i).

An exception applies, however, where an applicant "indicates either an intention to apply for asylum" or "a fear of persecution." *Id.* In such cases, the noncitizen must be referred "for an interview by an asylum officer," who must determine whether he "has a credible fear of persecution." *Id.* §§ 1225(b)(1)(A)(ii), (B)(ii); *see also id.* § 1225(b)(1)(B)(v) ("the term 'credible

---

[1] The terms "noncitizen" and "alien" are used interchangeably throughout this Order.

[2] Another statute, 8 U.S.C. § 1231, governs the detention of noncitizens who have been ordered removed.

[3] In the immigration context, the term "admission" means "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

fear of persecution' means that there is a significant possibility . . . that the alien could establish eligibility for asylum"). "If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110 (footnote omitted) (quoting 8 C.F.R. § 208.30(f)). But if the asylum officer concludes that the applicant does not have a credible fear, he must order the noncitizen removed from the United States. 8 U.S.C. § 1225(b)(1)(B)(iii)(I). The noncitizen may request that an Immigration Judge review the asylum officer's credible fear determination, but the officer's removal order is not otherwise subject to "further hearing or review." *Id.* §§ 1225(b)(1)(B)(iii)(I), (III).

In other cases, where an applicant for admission is seeking admission to the United States and the examining immigration officer determines that he is not "clearly and beyond a doubt entitled to be admitted," Section 1225(b)(2) provides that he "shall be detained for" standard removal proceedings. 8 U.S.C. § 1225(b)(2)(A); *see Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018).[4] A noncitizen detained under Section 1225(b)(2) may be released only if he is paroled "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5)(A). *Jennings*, 583 U.S. at 300 ("That express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released.").

Whereas Section 1225(b) "authorizes the Government to detain certain aliens *seeking admission into the country*," Section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* at 289 (emphases added).

---

[4] Standard removal proceedings are governed by 8 U.S.C. § 1229a, and they involve "an evidentiary hearing before an immigration judge" at which the noncitizen "may attempt to show that he or she should not be removed." *Thuraissigiam*, 591 U.S. at 108. These proceedings commence when a charging document, called a Notice to Appear, is filed in Immigration Court. 8 C.F.R. § 1003.14(a); *see* 8 U.S.C. § 1229a.

Section 1226(a) establishes a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General." For such individuals, the Attorney General (1) "may continue to detain the arrested alien," (2) "may release the alien on . . . bond of at least $1,500," or (3) "may release the alien on . . . conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). The arresting immigration officer makes an initial custody determination, but noncitizens have the right to request a custody redetermination (i.e., bond) hearing before an Immigration Judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Bond may be denied only if the government "either (1) prove[s] by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove[s] by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).

Section 1226(c) is the sole exception to Section 1226(a)'s discretionary detention framework. *See* 8 U.S.C. § 1226(a) ("Except as provided in subsection (c) . . . the Attorney General . . . may"); *id.* § 1226(c)(1) ("The Attorney General *shall* take into custody any alien who . . ." (emphasis added)). Until recently, Section 1226(c) required the detention of noncitizens who are inadmissible or deportable because they have committed or been sentenced for certain criminal offenses, or because they are affiliated with terrorist groups or activities. *See id.* §§ 1226(c)(1)(A)-(D). Through the Laken Riley Act, enacted in January 2025, Congress expanded Section 1226(c)'s mandatory detention requirement to a new category of noncitizens, but only where two criteria are met. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (adding 8 U.S.C. § 1226(c)(1)(E)). Under Section 1126(c)(1)(E), the Attorney General must also detain a noncitizen if he (i) is inadmissible because he is present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A), sought to fraudulently obtain requisite documentation or admission, *id.* § 1182(a)(6)(C), or lacks requisite documentation, *id.* § 1182(a)(7); and (ii) "is charged with, is

5

arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," 8 U.S.C. §§ 1226(c)(1)(E)(i)-(ii).

**II.     Factual Background.**

Dos Santos is a native and citizen of Brazil. ECF 1, ¶ 14; ECF 7-1, ¶ 6. On October 20, 2017, he entered the United States and encountered CBP officers near the southern border, in the area of Calexico, California. ECF 7-1, ¶ 6. When interviewed by the officers, dos Santos admitted that he did not have legal documents to enter or remain in the United States and that he had entered the country without being inspected by an immigration officer, but he also claimed a fear of returning to Brazil. *Id.* ¶¶ 7-8; *see* ECF 10-1, at 8. The officers consequently detained dos Santos under 8 U.S.C. § 1225(b)(1), placed him in expedited removal proceedings, and referred him for a credible fear interview. ECF 7-1, ¶¶ 7-8.

On November 16, 2017, USCIS made a positive credible fear finding and issued dos Santos a Notice to Appear that charged him with being inadmissible under 8 U.S.C. §§ 1182(a)(6)(A)(i)[5] and 1182(a)(7)(A)(i)(I).[6] *Id.* ¶ 9. ICE filed the Notice to Appear in the Immigration Court in Adelanto, California the next day, which terminated dos Santos' expedited removal proceedings

---

[5] Section 1182(a)(6)(A)(i) reads in full: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

[6] Section 1182(a)(7)(A)(i)(I) reads in full: "Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission . . . who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible."

6

under 8 U.S.C. § 1225(b)(1) and commenced standard removal proceedings against him under 8 U.S.C. § 1229a. *See id.* ¶ 10; ECF 10-1, at 9-10 (Notice to Appear); *Thuraissigiam*, 591 U.S. at 110. After dos Santos requested a custody redetermination hearing, the Department of Homeland Security stipulated to his release on bond in the amount of $15,000. *See* ECF 1, ¶ 16; ECF 10-1, at 11. On January 23, 2018, following a custody redetermination hearing conducted under 8 U.S.C. § 1226, an Immigration Judge accordingly ordered dos Santos released on a $15,000 bond. ECF 7-1, ¶ 11; *see* ECF 10-1, at 11 (custody redetermination order).[7] Dos Santos was released from ICE's custody six days later. ECF 7-1, ¶ 12.

Dos Santos has resided in the United States, subject to the Immigration Judge's 2018 bond order, for over seven years. On May 30, 2025, ICE officers conducted a traffic stop of a vehicle in which dos Santos was traveling. *See id.* ¶ 15. Dos Santos voluntarily spoke with the officers, and he informed them that, as alleged in the 2017 Notice to Appear, he had entered the United States without being inspected or admitted by an immigration officer. *See* ECF 10-1, at 6. At that time, dos Santos' removal proceedings concerning that Notice to Appear were pending in the Chelmsford Immigration Court. The ICE officers nevertheless obtained and executed a warrant for his arrest, which was issued under 8 U.S.C. § 1226, and issued a Notice of Custody Determination that ordered him detained, also under the authority of Section 1226. *See* ECF 7-1, ¶ 15; ECF 13-1 (executed Warrant for Arrest of Alien); ECF 13-2 (Notice of Custody Determination).[8]

---

[7] The Immigration Judge also ordered dos Santos to participate in an alternatives-to-detention program at the discretion of the Department of Homeland Security, ECF 10-1, at 11, but ICE terminated his participation in that program in February 2018 because dos Santos was also subject to the $15,000 bond. ECF 7-1, ¶¶ 11-13.

[8] In his declaration, ICE Acting Deputy Field Office Director John Charpentier asserts that dos Santos "is in ICE custody pursuant to 8 U.S.C. § 1225(b)." ECF 7-1, ¶ 5; *see also id.* ¶ 15 (same). The Court does not credit this assertion, which is in the nature of a legal conclusion, not a fact, and

7

Dos Santos was detained at an ICE office in Burlington, Massachusetts until June 1, 2025, when he was transferred to the Plymouth County Correctional Facility in Plymouth, Massachusetts. ECF 7-1, ¶¶ 15-16. ICE cancelled dos Santos' bond the next day. *Id.* ¶ 17. On June 13, 2025, ICE transferred dos Santos to the Federal Correctional Institution ("FCI") Berlin, in Berlin, New Hampshire, where he remained for approximately one month. *See id.* ¶¶ 18, 21. While detained at FCI Berlin, dos Santos sought a custody redetermination hearing, which was held on July 8, 2025. *Id.* ¶¶ 19-20. The Immigration Judge denied dos Santos' request for bond on the grounds that he is "statutorily ineligible for [immigration judge] custody redetermination." ECF 12, at 3. Dos Santos and ICE each waived their right to appeal that decision to the Board of Immigration Appeals ("BIA"). *Id.* at 4. On July 12, 2025, ICE transferred dos Santos back to the Plymouth County Correctional Facility, where he remains detained today. ECF 7-1, ¶¶ 21-22.

On July 22, 2025, dos Santos filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this Court. ECF 1. The petition alleges that his detention violates the Due Process Clause of the Fifth Amendment and federal immigration statutes. *See id.* ¶¶ 21-40. Dos Santos names as defendants the following individuals in their official capacities: Kristi Noem, the Secretary of the U.S. Department of Homeland Security; Todd Lyons, the Acting Director for ICE; Joseph D. McDonald, the Sheriff of Plymouth County, Massachusetts; and Antone Moniz, the Superintendent of the Plymouth County Correctional Facility. *Id.* ¶¶ 8-11. After receiving the government's response to the petition, ECF 7, and dos Santos' reply, ECF 10, the Court held a hearing and took the petition under advisement, ECF 11.

---

in any event is contradicted by the Notice of Custody Determination completed by the ICE officer who ordered dos Santos detained. *See* ECF 13-2.

## DISCUSSION

**I.     Exhaustion of Administrative Remedies.**

This Court has jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The government does not contest this Court's jurisdiction, but it contends that the Court should dismiss dos Santos' petition for failure to exhaust administrative remedies because he waived his right to appeal the Immigration Judge's decision denying his request for bond to the BIA.[9]

"There are two species of exhaustion: statutory and common-law." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). "The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'" *Id.* (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 (1st Cir. 2016)). Because exhaustion is not required by statute in this context, the government's exhaustion argument is measured against the "more permissive" common-law exhaustion standard. *Id.* at 256; *see Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) ("[C]ourts have more latitude in dealing with exhaustion questions when Congress has remained silent.").

While "the exhaustion doctrine ordinarily 'serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency,' and, thus, should customarily

---

[9] The government also contends that dos Santos has not exhausted his administrative remedies because he has not yet requested humanitarian parole under 8 U.S.C. § 1182(d)(5). *See* ECF 7, at 8-9 ("Moreover, Petitioner is entitled to ask ICE for discretionary parole from custody."). But that parole authority applies only to noncitizens who are "applying for admission to the United States," 8 U.S.C. § 1182(d)(5)(A), and are detained under 8 U.S.C. § 1225(b), *see Jennings*, 583 U.S. at 300. As explained in this opinion, dos Santos is detained under Section 1226(a), not Section 1225(b). He is therefore ineligible for parole under 8 U.S.C. § 1182(d)(5)(A) and need not request parole under that statute to exhaust his administrative remedies.

be enforced," there are "'circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.'" *Portela-Gonzalez*, 109 F.3d at 77 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145, 146 (1992)). As relevant here, "a court may consider relaxing the [exhaustion requirement] when unreasonable or indefinite delay threatens unduly to prejudice the subsequent bringing of a judicial action." *Id.* "And, relatedly, if the situation is such that 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim,' exhaustion may be excused even though 'the administrative decisionmaking schedule is otherwise reasonable and definite.'" *Id.* (quoting *McCarthy*, 503 U.S. at 147). Irreparable harm may be established where a petitioner will be incarcerated or detained pending the exhaustion of administrative remedies. *See Brito*, 22 F.4th at 256 ("'[E]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest.'" (quoting *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986))).

Waiver of the exhaustion requirement is warranted here. Because dos Santos waived his right to appeal the Immigration Judge's denial of his request for bond to the BIA, ECF 12, at 4, he lacks the ability to pursue further administrative remedies. This habeas petition is the sole means by which dos Santos can challenge the lawfulness of his detention. If dos Santos' petition were dismissed because of his failure to appeal the Immigration Judge's bond denial to the BIA, dos Santos—who, until his recent arrest and detention, had resided in the United States for over seven years pursuant to the Immigration Judge's 2018 bond order, *see* ECF 7-1, ¶¶ 11-15; ECF 10-1, at 11—would face an indefinite period of potentially unlawful detention pending the resolution of his removal proceedings and asylum application. At the hearing, dos Santos' counsel represented that those proceedings are expected to last several additional months, at a minimum. Such a

prolonged loss of liberty would, in these circumstances, constitute irreparable harm. *See Bois*, 801 F.2d at 468.[10]

Many of the policy concerns animating the common-law exhaustion requirement are, moreover, absent here. An Immigration Judge has already considered and denied dos Santos' bond request. *Cf. Brito*, 22 F.4th at 255-56 (requiring exhaustion where, among other things, the petitioners failed "to raise their alternatives-to-detention claims before their respective [immigration judges]"). That denial was based on a legal conclusion—namely, that dos Santos is statutorily ineligible for bond—not on any factual determinations particular to dos Santos' case. And, in any event, the underlying factual record is straightforward and undisputed. *Cf. McCarthy*, 503 U.S. at 145 (exhaustion requirement promotes judicial efficiency by creating "a useful record for subsequent judicial consideration, especially in a complex or technical factual context"). In these circumstances, where dos Santos' liberty interests "'weigh heavily against requiring administrative exhaustion,'" waiver of exhaustion is warranted. *Portela-Gonzalez*, 109 F.3d at 77 (quoting *McCarthy*, 503 U.S. at 146); *see also, e.g.*, *Villalta v. Sessions*, No. 17-cv-05390-LHK, 2017 WL 4355182, at *3 (N.D. Cal. Oct. 2, 2017) ("[T]he potential for irreparable harm to Petitioner, in the form of continued unlawful denial of bond hearings for potentially four months or more, persuades the Court that waiver of the exhaustion requirement is appropriate in the instant case." (quotation marks and brackets omitted)); *Rodriguez v. Bostock*, --- F. Supp. 3d ---, 2025 WL 1193850, at *10-11 (W.D. Wash. Apr. 24, 2025) (similar) (collecting cases).

---

[10] Even if dos Santos had not waived his right to appeal the Immigration Judge's denial of his bond request, waiver of the exhaustion requirement would be warranted in light of the BIA's current average processing times for bond appeals, which exceeded 200 days in 2024. *See Rodriguez v. Bostock*, --- F. Supp. 3d ---, 2025 WL 1193850, at *5, *9-*11 (W.D. Wash. Apr. 24, 2025) (waiving exhaustion requirement where, among other things, the petitioner was likely to experience irreparable harm if detained pending the BIA's resolution of his bond appeal); *see Gomes*, 2025 WL 1869299, at *5 (similar).

11

## II.     Lawfulness of Detention.

The central question posed by dos Santos' habeas petition is whether he is lawfully detained under Section 1225(b)(2), as the government now contends, or is instead subject to discretionary detention under Section 1226(a), as the government represented in its Notice of Custody Determination. Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," *Jennings*, 583 U.S. at 289, and it applies when a noncitizen is "arrested and detained" "[o]n a warrant issued by the Attorney General," 8 U.S.C. § 1226(a). That is precisely what occurred here. In 2018, an Immigration Judge ordered dos Santos released on bond under Section 1226(a). ECF 7-1, ¶ 11; ECF 10-1, at 11. Dos Santos then resided in the country for over seven years until, on May 30, 2025, he was arrested on a warrant issued pursuant to Section 1226. *See* ECF 7-1 ¶ 15; ECF 13-1. Following that arrest, dos Santos was ordered detained, again pursuant to Section 1226. *See* ECF 7-1, ¶ 15; ECF 13-2. Dos Santos thus argues that because he was arrested and detained pursuant to Section 1226, his detention continues to be governed by Section 1226(a)'s discretionary framework, and he must either be released on his previously imposed bond or receive a new bond hearing.

The government disagrees, contending that dos Santos' current detention is governed by Section 1225(b)(2). That statute "authorizes the Government to detain certain aliens seeking admission into the country." *Jennings*, 583 U.S. at 289. If an immigration officer determines that an applicant for admission who is "seeking admission is not clearly and beyond a doubt entitled to be admitted," Section 1225(b)(2) requires that the noncitizen be detained for removal proceedings under Section 1229a. 8 U.S.C. § 1225(b)(2)(A). It is undisputed that, when he was inspected by a CBP officer in October 2017, dos Santos was an applicant for admission who failed to demonstrate that he was entitled to be admitted. *See* ECF 7-1, ¶ 7. CBP accordingly detained him and placed

12

him in expedited removal proceedings pursuant to Section 1225(b)(1). *Id.* But after USCIS determined that dos Santos had a credible fear of returning to Brazil, he was served with a Notice to Appear, thus terminating his expedited removal proceedings and commencing standard removal proceedings under Section 1229a. *See id.* ¶ 9; *Thuraissigiam*, 591 U.S. at 110. An Immigration Judge then conducted a custody redetermination hearing under 8 U.S.C. § 1226 and ordered dos Santos released on bond. *See* ECF 7-1, ¶ 11; ECF 10-1, at 11. And when dos Santos was arrested by ICE in May 2025, it was on the authority of a warrant issued under Section 1226 rather than Section 1225(b)(2). *See* ECF 13-1. Thus, the question is whether Section 1225(b)(2) mandates the detention of a noncitizen, like dos Santos, who has been released into the United States on bond pursuant to Section 1226, is in the midst of standard removal proceedings, and is otherwise subject to Section 1226(a)'s discretionary detention framework.

For the reasons explained by this Court in *Gomes v. Hyde*, the answer to that question is no. *See* No. 25-cv-11571-JEK, 2025 WL 1869299, at *11-*17 (D. Mass. July 7, 2025). The plain text of Section 1226(a)—which provides that, following a noncitizen's arrest on a warrant, the Attorney General "may" detain the noncitizen, "may" release him on bond, or "may" release him on conditional parole, 8 U.S.C. §§ 1226(a)(1)-(2)—indicates Congress's intent to establish a discretionary, rather than mandatory, detention framework for noncitizens arrested on a warrant. *See Jennings*, 583 U.S. at 300 ("'the word "may" . . . implies discretion,'" whereas "'the word "shall" usually connotes a requirement'" (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016))). And while Section 1226(a) expressly carves out certain "criminal" noncitizens from its discretionary framework, it does not similarly carve out noncitizens who would be subject to mandatory detention under Section 1225(b)(2). *See* 8 U.S.C. § 1226(a) ("*Except as provided in subsection (c)* . . ., the Attorney General . . . *may*" (emphases added)).

13

"That express exception" to Section 1226(a)'s discretionary framework "implies that there are no *other* circumstances under which" detention is mandated for noncitizens, like dos Santos, who are subject to Section 1226(a). *Jennings*, 583 U.S. at 300 (citing A. Scalia & B. Garner, Reading Law 107 (2012)); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("that Congress has created specific exceptions" to the applicability of a statute or rule "proves" that the statute or rule generally applies absent those exceptions).

The government's interpretation of Section 1225(b)(2) would also render Section 1226(c)(1)(E)—which was added to Section 1226 in 2025 by the Laken Riley Act—superfluous. Under Section 1226(c)(1)(E), a noncitizen is subject to mandatory detention if he (i) is inadmissible because he is present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A), lacks requisite documentation, *id.* § 1182(a)(7), or sought to fraudulently obtain requisite documentation or admission, *id.* § 1182(a)(6)(C) (the "inadmissibility criterion"); "*and*" (ii) is charged with, arrested for, convicted of, or admits to committing certain crimes (the "criminal conduct criterion"). 8 U.S.C. §§ 1226(c)(1)(E)(i)-(ii) (emphasis added). Thus, a noncitizen arrested on a warrant is subject to mandatory detention only where *both* the inadmissibility criterion and the criminal conduct criterion are satisfied.

Interpreting Section 1225(b)(2) to apply to noncitizens who are arrested on a warrant while residing in the United States, as the government does, would render Section 1226(c)(1)(E)'s criminal conduct criterion superfluous for noncitizens who are inadmissible on two of the three grounds specified in the inadmissibility criterion. After all, a noncitizen who is present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A), or who lacks requisite documentation, *id.* § 1182(a)(7), is unlikely to prove to an examining immigration officer that he "is clearly and beyond a doubt entitled to be admitted," *id.* § 1125(b)(2)(A). Such is the case with

14

dos Santos: he has been charged with inadmissibility on both of these grounds. ECF 10-1, at 9. Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). The Court therefore concludes that the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States. *See Jennings*, 583 U.S. at 302-03 (Section "1226 applies to aliens already present in the United States" and "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest" (quoting 8 U.S.C. § 1226(a))).

The government resists this conclusion, arguing that "[t]o the extent 8 U.S.C. §§ 1225 and 1226 are in conflict, the 'specific provision' governs over the 'general one.'" ECF 7, at 6 (citing *Edmond v. United States*, 520 U.S. 651, 657 (1997)). In the government's view, Section 1225(b)(2), which applies only to applicants for admission, is a "specific" provision compared to Section 1226, which it describes as "the 'default' detention authority." *Id.* (quoting *Jennings*, 583 U.S. at 288). This argument is premised on a mischaracterization of the Supreme Court's opinion in *Jennings*. *Jennings* did not, as the government suggests, describe Section 1226 as the "default" detention authority in federal immigration law writ large. *See Jennings*, 583 U.S. at 288-89. It instead explained that in circumstances where Section 1226 applies, "Section 1226(a) sets out the default rule"—that is, discretionary detention—to which Section 1226(c)'s mandatory detention requirement is the exception. *Id.* Thus, Section 1225(b)(2) is not "more specific" than Section 1226(a); these provisions simply apply in different circumstances. Section 1225(b)(2) governs the detention of applicants for admission who are "seeking admission" to the United States, whereas

15

Section 1226(a) governs the detention of noncitizens who are arrested "[o]n a warrant" while present in the United States. 8 U.S.C. §§ 1225(b)(2), 1226(a); *see Jennings*, 583 U.S. at 289, 302-03.[11] Because dos Santos was arrested on a warrant while residing in the United States, he is subject to Section 1226(a)'s discretionary detention framework. He is not lawfully detained under Section 1225(b).

### III. Remedy.

Pursuant to Section 1226, dos Santos may be detained only if, following a bond hearing before an Immigration Judge, the government proves by clear and convincing evidence that he poses a danger to the community, or proves by a preponderance of the evidence that he is a flight risk. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1); *Hernandez-Lara*, 10 F.4th at 41. Dos Santos argues that because he already had that hearing in 2018, and was released on bond, this Court

---

[11] Nor, as the government argues in passing, is dos Santos now detained under Section 1225(b)(1)(B)(ii). ECF 7, at 7. That statute provides that if an asylum "officer determines at the time of the [credible fear] interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). The "plain meaning" of that provision, the Supreme Court has explained, "is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum." *Jennings*, 583 U.S. at 299 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)). The government does not clarify whether, in its view, an Immigration Judge constitutes an "immigration officer," as that term is used in *Jennings*. Compare 8 U.S.C. § 1101(a)(18) (definition of "immigration officer"), *with id.* § 1101(b)(4) (definition of "immigration judge"). To the extent an Immigration Judge is *not* an immigration officer, the government does not contend that any immigration officers have a further role to play in considering dos Santos' application for asylum. Rather, the immigration officers finished considering his application for asylum in November 2017, when USCIS made a positive credible fear finding and issued him a Notice to Appear, thereby commencing standard removal proceedings against him. ECF 7-1, ¶ 9. At that point, dos Santos became subject to the jurisdiction of the Immigration Court, which thereafter considered his request for custody redetermination and released him on bond. To the extent an Immigration Judge *can* constitute an "immigration officer," as that term is used in *Jennings*, an Immigration Judge conducted a custody redetermination hearing on January 23, 2018 and ordered dos Santos released on bond. *Id.* ¶ 11. At that point, dos Santos became subject to the discretionary detention regime under 8 U.S.C. § 1226. And when, more than seven years later, he was arrested on a warrant while residing in the United States, he was, as the Notice of Custody Determination states, detained under the authority of Section 1226, not Section 1225(b)(1)(B)(ii).

16

should release him under the Immigration Judge's 2018 bond order. He further contends that ICE failed to demonstrate that a change of circumstance justified its decision to unilaterally cancel his bond in May 2025, and furthermore, that the government never even returned the bond he posted in 2018 or communicated with the obligor for that bond. The government disputes that ICE was required to make any showing before cancelling the 2018 bond order, but it does not dispute that it still has the funds posted by dos Santos in 2018. Nevertheless, the government argues that the appropriate remedy is to order the Immigration Judge to conduct a new hearing at which it considers dos Santos' eligibility for bond under Section 1226(a) yet again.

Section 1226(b) vests the government with broad discretion to cancel a noncitizen's bond, providing that "[t]he Attorney General *at any time* may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b) (emphasis added). The BIA has held, however, that "where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *see Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (citing *Sugay* and noting government counsel's representation that "DHS has incorporated [*Sugay*'s] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (enjoining the government, on due process grounds, from rearresting noncitizen previously released on bond "unless and until a hearing, with adequate notice, is held in Immigration Court" to determine whether there has been a material change in circumstances).

The government has not argued, much less presented any evidence to suggest, that ICE's decision to unilaterally cancel the Immigration Judge's 2018 bond order was justified by "a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. at 640. For example, there is no evidence in the record to suggest that dos Santos violated the terms of his release on bond, failed to attend Immigration Court hearings, or engaged in criminal conduct.[12] Rather than basing its decision on dos Santos' own conduct and circumstances, ICE appears to have cancelled his bond for no reason other than the fact that it encountered him by chance while conducting a traffic stop. *See* ECF 10-1, at 6. When the officers questioned dos Santos, he informed them that he had entered the United States without being inspected and admitted by an immigration officer. *See id.* But this was not new information to ICE: it had charged dos Santos with being inadmissible for precisely this reason when it issued him a Notice to Appear in 2017, and he was in the midst of removal proceedings pertaining to that charge at the time of his arrest. *See id.* at 9-10. The government has, accordingly, failed to carry its burden to show that a change in circumstances supported its decision to revoke the Immigration Judge's 2018 bond order. *See Matter of Sugay*, 17 I. & N. Dec. at 640. Unless and until ICE carries that burden at a hearing before an Immigration Judge, dos Santos must be released from custody subject to the 2018 bond order. *See Ortega*, 415 F. Supp. 3d at 970.

## CONCLUSION AND ORDER

For the foregoing reasons, dos Santos' petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF 1, is GRANTED. The respondents are ORDERED to release dos Santos from the custody of U.S. Immigration and Customs Enforcement within 48 hours of the entry of this

---

[12] In his declaration, ICE Acting Deputy Field Office Director John Charpentier states: "On February 7, 2025, the Plymouth Police Department, in Plymouth Massachusetts, arrested the Petitioner for Unlicensed Operation of a Motor Vehicle. On February 10, 2025, the charge was dismissed." ECF 7-1, ¶ 14. The government has not offered any evidence related to this charge, nor has it argued that dos Santos' bond was revoked because of it.

Memorandum and Order, subject to the Immigration Judge's January 23, 2018 bond order. ECF 10-1, at 11. The respondents are further ORDERED to file a status report on or before August 18, 2025, confirming that dos Santos has been released from custody.

    SO ORDERED.

                                        /s/ Julia E. Kobick
                                        JULIA E. KOBICK
                                        UNITED STATES DISTRICT JUDGE

Dated: August 14, 2025